IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02669-WYD-MEH

STEVEN DOUGLAS GREEN,

      Plaintiff,

v.

WENDY BROWN, individual capacity
DARRELL SNYDER, individual and official capacity, and
GERALD EMRICK, official capacity,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court are Defendant Brown's Motion to Dismiss [filed April 12, 2011; docket #60], Defendants Snyder and Emrick's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [filed April 15, 2011; docket #64], and Plaintiff's "Summary Judgement Motion" [filed April 28, 2011; docket #75]. The matters are referred to this Court for recommendation. (Dockets ##61, 65, 79.) The motions to dismiss are fully briefed, and oral argument would not assist the Court in its adjudication. For the reasons below, the Court **RECOMMENDS** Defendant Brown's Motion to Dismiss be **GRANTED**, Defendants Snyder and Emrick's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART** as stated herein, and Plaintiff's "Summary Judgement Motion" be **DENIED WITHOUT PREJUDICE**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings

## BACKGROUND

Plaintiff is a state prisoner incarcerated at the Centennial Correctional Facility in Canon City, Colorado.  Plaintiff was previously incarcerated at Sterling Correctional Facility in Sterling, Colorado, where the events at issue in this lawsuit took place.  Plaintiff filed his initial complaint *pro se* on November 2, 2010, which is the governing pleading, in addition to the brief amendment accepted by the Court on May 5, 2011.  (Dockets ## 3, 80, 85.)  Plaintiff brings four claims pursuant to 42 U.S.C. § 1983, alleging violations of his First and Eighth Amendment rights, as well as a violation of 42 U.S.C. § 1997d, summarized as follows: 1) Defendant Brown sexually harassed Plaintiff in violation of the Eighth Amendment's prohibition of cruel and unusual punishment; 2) Defendant Brown demanded and later received gifts from Plaintiff in violation of the Eighth Amendment's prescription against excessive fines; 3) Defendant Snyder retaliated against Plaintiff by mishandling prison grievance forms in violation of the First Amendment; and 4) Defendant Emrick retaliated against Plaintiff in violation of Section 1997d of 42 U.S.C.  (Docket #3.)  Plaintiff sues Defendant Brown in her individual capacity, Defendant Snyder in his individual and official capacities, and Defendant Emrick in his official capacity only.  (*Id*. at 2.)  Plaintiff requests injunctive relief, compensatory damages, and punitive damages.  (*Id*. at 8; docket #80 at 4.)

Defendants responded to Plaintiff's complaint with two motions to dismiss, which the Court further describes below in its evaluation of each motion.  In sum, Defendants assert an entitlement

---

or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

to qualified immunity and argue that Plaintiff fails to state a claim upon which relief may be granted. Defendants ask the Court to dismiss Plaintiff's complaint in its entirety.

## FACTUAL ALLEGATIONS

As a preliminary matter, the Court notes that it has rejected the exhibits submitted by Plaintiff with his responses, for purposes of this recommendation.  (*See* docket #78.)  "Courts have broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998).  Fed. R. Civ. P. 12(d) requires that, on a motion brought pursuant to Rule 12(b)(6) or 12(c), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Unless dismissal can be justified without considering the outside materials, the failure to follow Rule 12(d)'s mandate may result in reversible error.  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007).  However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted).

Here, Defendants filed motions to dismiss without referencing documents outside of the complaint.  As Defendants premise their motions on Plaintiff's alleged failure to state a claim upon which relief may be granted, the Court declines to convert the motions to motions for summary judgment due to the exhibits submitted by Plaintiff.  The Court excludes the exhibits and issues this recommendation on the pleadings and briefing alone.  The Court gleans the following factual allegations from Plaintiff's complaint and responses, in chronological order, keeping in mind its obligations to liberally construe a *pro se* plaintiff's filings and to accept the well-pled allegations as true.

At the time the incidents described below began, Defendant Brown was a prison guard at Sterling Correctional Facility; Defendant Snyder was the case manager for Plaintiff at Sterling Correctional Facility; and Defendant Gerald Emrick was a sergeant at Sterling Correctional Facility. (Docket #3 at 2.)

Defendant Brown and Plaintiff conversed on multiple occasions while Plaintiff was incarcerated in Sterling Correctional Facility. (*Id*. at 4-6.) In October 2009, Plaintiff and Defendant Brown engaged in a "highly explicit sexual conversation" over the intercom in Plaintiff's cell. Plaintiff told Defendant Brown that it was not a good idea to have the conversation, and Defendant Brown replied that "you better not say nothin' to anybody about this because you'll be the one to get in trouble, and never leave prison!" (*Id*. at 4.) In a later conversation, Defendant Brown complained about suicide and depression to Plaintiff and also told him that she would kill herself if Plaintiff told anyone about their prior sexual conversation. (*Id*.) Defendant Brown asked Plaintiff to "set up" other inmates in order to improve her image at the correctional facility. (*Id*.) She instructed Plaintiff to say he loved her "or else." (*Id*.)

The following month, November 2009, Defendant Brown suggested that Plaintiff sexually touch himself and watch as she stripped inside a prison control tower. (*Id*. at 4.) That night she exposed herself to Plaintiff several times. (*Id*. at 4.) Six days later, Defendant Brown exposed her breasts, sexually touched herself in the control tower in direct view of Plaintiff, and asked Plaintiff to "talk dirty" through the cell's intercom. (*Id*. at 10.) After this event, "on rare occasion" Defendant Brown walked through the unit where Plaintiff was incarcerated and told the Plaintiff to take off his clothes and masturbate when Defendant Brown would pass his cell. (*Id*.)

A day after the control tower incident, Defendant Brown began requesting money and gifts from Plaintiff. (*Id*. at 5.) Defendant Brown stated she would "not be happy" if she did not receive the gifts, adding that the last time an inmate made her angry she "set him up" and "caused him to

get a write up." (*Id*.)  In response, Plaintiff sent greeting cards, a box of chocolates, stamps, and four dollars in cash to Defendant Brown.  (*Id*.)

In January 2010, Defendant Brown masturbated in the control tower in sight of the Plaintiff for the second time.  (*Id*. at 10.)  On January 14, 2010, 75 days after the initial sexual conversation, Plaintiff submitted a "request kite" in order to get a grievance form to notify the correctional facility about the events between Defendant Brown and himself.  (*Id*. at 6.)  Near the end of January, Plaintiff received a handwritten note from Defendant Brown stating her intent to quit working at Sterling Correctional Facility due to problems with other co-workers.  (*Id*. at 10.)

In early March 2010, Plaintiff had not yet received any response to the request kite that he submitted in January.  (*Id*. at 6.)  Plaintiff called "Doc Tip Hotline" in an effort to obtain a grievance form.  (*Id*.)  On March 3, 2010, after calling the hotline, Plaintiff obtained and filed a step one grievance form.  (*Id*.)  Twelve days later Plaintiff received a response to his step one grievance.  (*Id*.)  Plaintiff submitted a second request kite to Defendant Snyder on March 19, 2010, requesting a step two grievance.  (*Id*.)  Defendant Snyder responded to the second request kite with a handwritten note, explaining "I do not have those forms, so I forwarded the kite to the library.  I will look on the computer.  If the library sends you some let me make copies."  (*Id*.)

On March 29, 2010, Plaintiff attempted to turn in grievance forms to complain about "other instances of retaliation" at Sterling Correctional Facility.  (*Id*. at 15.)  Plaintiff asked Defendant Emrick, a sergeant assigned to the Administrative Segregation Units, to turn in the grievances.  (*Id*.)  Defendant Emrick stated *"Im [sic] not picking up any grievances and I'm not telling nobody to read nothing!  I've already been debriefed about your situation!  That's your problem now, you're too busy telling too much about stuff as it is!"* (*Id*.)  Plaintiff believes this response was due to a verbal reprimand received by Defendant Emrick for his lack of supervision over Defendant Brown.  (*Id*.)

5

On April 15, 2010, Plaintiff received a step two grievance form which he filed with Defendant Snyder, regarding the exchanges between Plaintiff and Defendant Brown.  (*Id.* at 6.) Seven days later Plaintiff submitted a request kite to Defendant Snyder to inquire whether an investigator had received the grievance.  (*Id.* at 14.)  Defendant Snyder responded to Plaintiff with a handwritten letter stating, "[h]e got your Kite; he may not get [your] grievance."  (*Id.*)

Plaintiff filed two more grievances on May 20, 2010: first, a step three grievance against Defendant Brown, and second, a step one grievance to inquire about the missing step two grievance Plaintiff sent to Defendant Snyder on April 15, 2010.  (*Id.*)  Plaintiff received a response from an unidentified source on June 24, 2010, explaining

> I have checked your chrons and Case Manager Snyder was very good about making Chrons that concerned your grievances.  There was  no chron entries that concerned you turning in a step 2 grievance in this time frame and when I spoke with Case Manager Snyder he does not remember you turning in a Step 2 grievance before you left.

(*Id.*)  Similarly to his allegation against Defendant Emrick, Plaintiff believes Defendant Snyder deliberately mishandled his grievances as retaliation for the incidents between Plaintiff and Defendant Brown.  (*Id.*)

Plaintiff asserts that Defendant Snyder's conduct caused his step three grievance against Defendant Brown to be denied for Plaintiff's failure to exhaust the administrative remedies.  (Docket #80 at 1.)  As a result of the above events, Plaintiff contends he suffers mental and emotional distress, which have triggered physical harm in the form of irritable bowel syndrome.  (*Id.*; docket #3 at 11.)

**STANDARD OF REVIEW**

## I.        Construction of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional citations omitted)).

## II.       Rule 12(b)(6): Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  Plausibility,

in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

The Rule 12(b)(6) evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

I.      **Defendant Brown's Motion to Dismiss**

Defendant Brown responded to Plaintiff's Complaint with a motion to dismiss.  (Docket #60.)  Defendant Brown asserts three arguments supporting her request for dismissal: 1) Plaintiff's factual allegations are not sufficiently serious to state a claim of cruel and unusual punishment under the Eighth Amendment; 2) the prohibition against excessive fines is limited to fines imposed by the government; and 3) Defendant Brown is entitled to qualified immunity. (*See id.*)

In response, Plaintiff asserts that the factual allegations memorialized in his complaint are sufficiently serious for an Eighth Amendment claim as "he has suffered a great deal of mental, emotional, and physical pains as a result of the repeated sexual harassment."  (Docket #77 at 2.) Plaintiff invokes the Prison Rape Elimination Act ("PREA") as authority in his favor.  (*Id.* at 1, 2.) Regarding the excessive fines claim, Plaintiff concedes he "found no related cases to legally support his allegations."  (*Id.* at 3.)  Plaintiff contends that Defendant Brown is not entitled to qualified immunity because her actions exceeded the scope of her duties and violated the PREA and the federal constitution.  (*Id.* at 3-4.)

In reply, Defendant Brown reiterates her argument that the allegations presented by Plaintiff are "not sufficiently serious to constitute a violation of the Eighth Amendment."  (Docket #86 at 1.) Defendant Brown states that Plaintiff fails to provide legal precedent demonstrating that sexual harassment alone can constitute an Eighth Amendment violation, and that Plaintiff  "confessed dismissal of his excessive fines claim."  (*Id.* at 2.)  She reemphasizes her entitlement to qualified immunity, which the Court addresses first.  (*Id.* at 4.)

### A.      *Qualified Immunity*

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement to not stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability. *Id.*  When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation.  *Pearson,* 129 S. Ct. at 816-22.  *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

The Court first evaluates Plaintiff's assertions regarding sexual harassment, and second, assesses the claim regarding excessive fines.  For the reasons stated below, the Court concludes that neither claim states a cognizable violation of Plaintiff's constitutional rights.  Thus, the Court

determines that Defendant Brown is entitled to qualified immunity, and Plaintiff's two claims against her should be dismissed with prejudice.

### B.    Claim One: Sexual Harassment

Before evaluating Plaintiff's claim under the Eighth Amendment, the Court addresses Plaintiff's invocation of the PREA. "PREA provides no private right of action." *Nasious v. City & Cnty. of Denver*, No. 08-cv-00275-ZLW-KMT, 2010 WL 1347731, at *2 (D. Colo. Mar. 31, 2010) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-80 (2002) ("courts do not imply a right to sue absent a statute's unambiguous intent to confer individual rights")), reversed on other grounds by *Nasious v. City & Cnty. of Denver*, No. 10-1181, 2011 WL 595789 (10th Cir. 2011) (unpublished). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue . . . The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008) (citing 42 U.S.C. § 15601 *et seq.*).  The Court thus disregards Plaintiff's assertion of the PREA as a basis for his claim and evaluates the allegations of sexual harassment under the Eighth Amendment.

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment of the United States Constitution." *Benglen v. Zavaras*, 7 F. Supp. 2d 1171, 1173 (D. Colo. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  The evaluation of a claim alleging an Eighth Amendment violation, including those alleging sexual abuse, involves two prongs: "(1) an objective prong that asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials act[ed] with a sufficiently

culpable state of mind.'"  *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quotation

omitted) (analyzing Eighth Amendment claim of sexual abuse of prisoner under two prong test).

"To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove,

as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter,

that the officer in question acted with a sufficiently culpable state of mind."  *Joseph v. U.S. Fed.*

*Bureau of Prisons*, 232 F.3d 901, 2000 WL 1532783, at *1 (10th Cir. 2000) (unpublished)

(quotation omitted).  The objective prong of the evaluation is "contextual and responsive to

contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The Tenth

Circuit opined that sexual abuse is repugnant to contemporary standards of decency, and allegations

of sexual abuse can satisfy the objective component of an Eighth Amendment claim.  *Smith,* 339

F.3d at1212.; *see also Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("[t]here can be no

doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively,

sufficiently serious' enough to constitute an Eighth Amendment violation").

However, the Supreme Court also determined that "not every malevolent touch by a prison

guard gives rise to a federal cause of action."  *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010)

(internal quotation marks and citations omitted).  "An action by a prison guard may be malevolent

yet not amount to cruel and unusual punishment."  *Marshall v. Milyard*, No. 10-1104, 2011 WL

285563, at *2 (10th Cir. 2011) (unpublished) (citing *Hudson*, 503 U.S. at 1, 9 (1992)).  The Tenth

Circuit held that if a "[p]laintiff does not allege that the [offensive touching] was conducted 'in an

abusive fashion or with unnecessary force,' he does not state a claim under the Eighth Amendment."

*Jackson v. Cen. N.M. Corr. Facility*, 976 F.2d 740, 1992 WL 236921, at *4 (10th Cir. 1992)

(unpublished) (quoting *Levoy v. Mills*, 788 F.2d 1437, 1439 (10th Cir. 1986)).  *See also Austin v.*

*Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." (internal citations omitted)); *Howard v. Everett*, 208 F.3d 218, 2000 WL 268493, at *1 (8th Cir. 2000) (unpublished) ( "sexual harassment, absent contact or touching, does not constitute unnecessary and wanton infliction of pain").

The Second Circuit and Eleventh Circuit have evaluated on-point claims by state inmates. Most recently, in *Boxer X v. Harris*, the pro se prisoner plaintiff alleged that a female prison guard repeatedly instructed him to strip and masturbate in front of her, with the threat of retribution if he did not comply.  437 F.3d 1107, 1109 (11th Cir. 2006).  The Eleventh Circuit explicitly held that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than de minimus injury."  *Boxer X*, 437 F.3d at 1111.  The court dismissed this Eighth Amendment claim as failing to state a cognizable constitutional violation.

In *Morales v. Mackalm*, the pro se prisoner plaintiff alleged that a female prison guard "asked him to have sex with her and to masturbate in front of her and other female staffers."  278 F.3d 126, 132 (2d Cir. 2002), abrogated on other grounds by *Berry v. Kerik*, 345 F.3d 126, 127-28 (2d Cir. 2003).  The Second Circuit determined that these facts did not state a constitutional claim of sexual harassment.  *Morales*, 278 F.3d at 132 (relying on *Boddie*, 105 F.3d at 859-61).

In *Boddie* (also discussed in *Morales*), the Second Circuit concluded that it was not a violation of the Eighth Amendment where a female prison guard was interacting with a male prisoner and "bump[ed] into [his] chest with both her breasts so hard [he] could feel the points of her nipples against [his] chest."  105 F.3d at 860.  This allegedly happened twice, then the prison

guard bumped into him with her whole body, pinning him to the door. *Id*. The plaintiff further alleged that previously, the female guard inappropriately touched the plaintiff's privates and stated "[Y]ou know your [sic] sexy black devil, I like you." *Id*. at 859-60. The court found that the "small number of incidents in which [plaintiff] allegedly was verbally harassed, touched, and pressed against without his consent" were not "objectively, sufficiently serious" enough to constitute cruel and unusual punishment. *Id*. at 861.

The Tenth Circuit has previously addressed similar factual circumstances, although not as directly on-point as *Boxer X* and *Morales*. In *Joseph v. United States Federal Bureau of Prisons*, a female corrections officer "allegedly touched [a male prisoner] several times in a suggestive manner and exposed her breasts to him." 2000 WL 1532783 at *1. The *Joseph* Court determined that this conduct was not "objectively, sufficiently serious" to state a constitutional violation, even though it caused the plaintiff emotional distress. *Id*. at *2.

In *Escobar v. Reid,* a case adjudicated in this District, a prisoner alleged that a prison guard "groped plaintiff's buttocks and asked plaintiff to fondle his genitals, and has passed a flat hand vertically up the crack of the plaintiff's buttocks" while other defendants laughed at the plaintiff. 668 F. Supp. 2d 1260, 1295 (D. Colo. 2009). The court considered this conduct, although "clearly unwelcome," to not be so harmful as to be cruel and unusual in violation of the Eighth Amendment. *Escobar*, 668 F. Supp. 2d at 1296.

In comparison, the plaintiff in *Thomas v. District of Columbia* accused a corrections officer of forcible touching, sexual harassment, and spreading rumors that the plaintiff "is a homosexual and a 'snitch.'" 887 F. Supp. 1, *3, *4-5 (D.D.C. 1995). The court concluded the corrections officer's conduct "posed a substantial risk of serious bodily harm," thus the allegations were

sufficient to state a claim of cruel and unusual punishment.  887 F. Supp. at *5.

Here, the Court believes Plaintiff alleges a sufficiently culpable state of mind by Defendant Brown, in satisfaction of the subjective element of the Eighth Amendment evaluation.  The objective prong of the two-part test gives the Court pause.  Accepting the allegations as true, the events described in this case are quite similar to *Boxer X* and *Morales*, and comparatively similar to the remaining cases in certain aspects, namely that the complained-of harassment was by prison staff, Plaintiff was asked to masturbate, Defendant Brown exposed herself to Plaintiff, and Defendant Brown made threats to Plaintiff regarding their sexual encounters.[2]  Notably, Plaintiff does not allege any significant level of physical danger created by Defendant Brown as described in *Thomas*.

The Court finds that Defendant Brown's conduct was crude and unprofessional, but ultimately de minimus, in terms of a potential constitutional violation.  In consideration of the above-stated jurisprudence, none of the actions in this case, individually or collectively, involved a harm of constitutional proportions so as to violate Plaintiff's Eighth Amendment rights.  Therefore, the Court concludes that Defendant Brown is entitled to qualified immunity from Plaintiff's assertion of sexual harassment, and his Claim One should be dismissed with prejudice.

### C.    Claim Two: Excessive Fines

The Eighth Amendment proscribes the imposition of "excessive fines."  U.S. Const. amend. VIII.  "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"  *Austin v. United States*, 509 U.S. 602, 609-10

---

[2] Plaintiff alleged four separate threats in his Complaint; 1) "I'm gonna kill myself if you tell anybody - my life is screwed up already as it is." (docket #3 at 10); 2) "tell me you love me, or else!" (*id*.); 3) "The last time an inmate made me mad, I set him up and caused him to get a write up." (*id.* at 5); 4) " you better not say nothin' to anybody about this because you'll be the one to get in trouble, and never leave prison!"(*id*. at 4).

(1993) (citation omitted) (holding that the Excessive Fines Clause applies to *in rem* civil forfeiture proceedings).  The Tenth Circuit explained that the clause is "intended to limit only those fines directly imposed by, and payable to, the government." *Hopkins v. Okla. Pub. Emps. Ret. Sys.,* 150 F.3d 1155, 1162 (10th Cir. 1998) (citing *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 265 (1989)).  The term "fine" refers to "a payment to a sovereign as punishment for some offense." *Hopkins,* 150 F.3d at 1162.

Plaintiff asserts that Defendant Brown extorted gifts and money from him.  (Docket #3 at 5.)  Plaintiff contends Defendant Brown stated that she would be angry if she did not receive gifts from him, and that the last person who made her angry was "set up" and received a write up as a result.  (*Id*.)  Plaintiff recounts that he gave her greeting cards, chocolate, postage stamps, and $4.00 cash.  (*Id*.)

In order for these gifts to be subject to the excessive fines clause, Plaintiff must show the "fine" was imposed by and payable to the government, as some form of punishment.  The facts presented do not bear this interpretation.  True, Defendant Brown is prison staff; however, by Plaintiff's own words, Defendant Brown was not acting within the scope of her duties.[3] (*See* docket #77 at 2 ("Def. Wendy Brown repeatedly abandoned her duties as a trained correctional officer").)  Plaintiff's allegations do not demonstrate that the gifts and $4.00 in cash constituted a fine directly imposed against Plaintiff as punishment by the government.[4]  Therefore, the Court concludes that

---

[3]Moreover, under 42 U.S.C. §1983, Plaintiff can only bring suit against Defendant Brown in her individual capacity, not in her official capacity as a representative of the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in the official capacities are "persons" under §1983.").

[4]Additionally, Defendant Brown is not a sovereign actor typified in excessive fines jurisprudence.  *See United States v. Wagoner Cnty. Real Estate*, 278 F.3d 1091, 1095 (10th Cir. 2002) ("The *district court* issued a warrant of arrest in rem for plaintiff's property" (emphasis

Defendant Brown is entitled to qualified immunity from Plaintiff's assertion of an excessive fine, and his Claim Two should be dismissed with prejudice.

### D.   Summary

Plaintiff fails to state a cognizable constitutional violation committed by Defendant Brown, thus Defendant Brown is entitled to qualified immunity from both claims brought against her.  The Court recommends Defendant Brown's motion to dismiss be granted, and Plaintiff's Claims One and Two be dismissed with prejudice.

## II.   Defendants Snyder and Emrick's Motion to Dismiss

Defendants Snyder and Emrick responded to Plaintiff's complaint with a motion to dismiss. (Docket #64.)  Defendants Snyder and Emrick present four arguments in support of their request that Plaintiff's complaint be dismissed: 1) the actions of Defendants Snyder and Emrick, at worst, only caused a delay in Plaintiff filing his grievances and therefore are not sufficiently adverse to chill a person of ordinary firmness from exercising his right to file grievances;  2) Plaintiff failed to prove that retaliation was the actual "but for" cause of the retaliatory motive; 3) Defendants Snyder and Emrick are entitled to qualified immunity; and 4) Plaintiff's claims for compensatory damages are not viable under the Prison Litigation Reform Act's ("PLRA") physical injury requirement.  (*See id.*)

---

added)); *Hopkins*, 150 F.3d at 1157-58 (10th Cir. 1998) (statute passed by the *Oklahoma Legislature* depriving a felon of pension benefits was considered an action by the government for purposes of Excessive Fines Clause (emphasis added)); *United States v. One Parcel Prop. Located at Lot 85, Cnty. Ridge*, 100 F.3d 740, 741 (10th Cir. 1996) ("*City of Lenexa*, Johnson County, Kansas, initiated a forfeiture proceeding in the state district court against Lot 85, Mr. Muchnick's car, and $237.00." (emphasis added)).  Even if the Court were to construe the gifts as a fine within the meaning of the Eighth Amendment, the gifts and cash do not meet the standard of gross disproportionality required to show a violation of this clause.  *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998) ("a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense.").

In response, Plaintiff contends that the factual allegations are sufficiently adverse, as Defendant Snyder was the only person from whom Plaintiff could obtain a grievance form, as well as the appropriate person to receive the completed grievance form. (Docket #76 at 2.) Plaintiff alleges that Defendant Snyder intended to keep Plaintiff from filing a timely grievance against Defendant Brown, and this conduct would chill a person of ordinary firmness from seeking to file a grievance. (*Id*. at 2-3.) Plaintiff believes the but-for connection is met, as demonstrated by Defendant Snyder stating to Plaintiff that the investigator may not receive Plaintiff's submitted grievance. (*Id*. at 3.) Because Defendant Snyder violated the regulations governing the submission of grievances, Plaintiff claims he is not entitled to qualified immunity. (*Id*. at 5.) Plaintiff explains that he did in fact suffer a physical injury resulting from Defendant Snyder's retaliation, in that his mental and emotional distress caused irritable bowel syndrome; thus his request for compensatory damages is proper. (*Id*.)

Regarding Defendant Emrick, Plaintiff emphasizes that he sues Defendant Emrick in his official capacity only, thus he may request injunctive relief; Plaintiff notes that he does not seek money damages for his claim against Defendant Emrick. (*Id*.) Other than this clarification, Plaintiff points out that he declines to make any further argument regarding Defendant Emrick and will "let the courts decide whether injunctive relief is appropriate or not." (*Id*. at 6.)

In reply, Defendants Snyder and Emrick challenge Plaintiff's statement that Defendant Snyder was the only person from whom Plaintiff could obtain a grievance form. (Docket #93 at 2-3.) Defendants contend that Plaintiff "could have obtained a grievance form from the library or another staff person, which he apparently did." (*Id*. at 3.) Defendants point out that Plaintiff brings new allegations in his response, bolstering those (but not included) in his complaint. (*Id*.)

Defendant Snyder argues that Plaintiff's speculation as to his motivation for allegedly mishandling the grievance forms is not enough to establish a factual basis for relief. (*Id*. at 4.) Defendant Emrick reiterates that his as-described "brusque" behavior is not sufficient to state a claim of retaliation. (*Id*.) Defendants clarify that they ask the Court to dismiss Plaintiff's request for compensatory damages from Defendant Snyder, despite the physical injury asserted by Plaintiff. (*Id*. at 5.) Both Defendants reemphasize their assertion of qualified immunity. (*Id*. at 4-5.)

### A.       *Qualified Immunity*

The Court incorporates by reference the statement of law regarding qualified immunity explained above, in the section analyzing Defendant Brown's motion to dismiss. The Court first evaluates Plaintiff's assertion of retaliation against Defendant Snyder; second, assesses the claim regarding Section 1997d harassment against Defendant Emrick; and third, determines whether Plaintiff may request compensatory damages. For the reasons stated below, the Court concludes that Plaintiff states a plausible claim for relief against Defendant Snyder but not against Defendant Emrick, and Plaintiff's request for compensatory damages does not comport with the PLRA. As the elements of retaliation were well-settled at the time of the alleged wrongdoing, Defendant Snyder is not entitled to qualified immunity, at this stage of the litigation. However, the Court determines Defendant Emrick is entitled to qualified immunity, and Plaintiff's Claim Four should be dismissed with prejudice.

### B.       *Claim Three: First Amendment Retaliation*

"It is well-settled that [p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (internal quotation marks omitted) (citing *Smith v. Maschner*, 899 F.2d 940, 947

(10th Cir. 1990)). "It is clearly established that denying a person the ability to report an alleged constitutional violation through a grievance process or complaint is an infringement of protected speech." *Conkleton v. Muro*, No. 08–cv–02612-WYD-MEH, 2011 WL 1119869, at *2-3 (D. Colo. March 28, 2011) (citing *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty.*, 482 F.3d 1232, 1243 (10th Cir. 2007)). Plaintiff may make a showing of retaliation by demonstrating the following: 1) he engaged in constitutionally protected activity; 2) Defendant Snyder's actions caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and 3) Defendant Snyder's "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

The Court finds that Plaintiff plausibly pleads all three elements, in light of the Court's obligation to liberally construe pro se filings and to accept the well-pled allegations as true.[5] First, Plaintiff engaged in the constitutionally protected activity of attempting to file, and actually filing, grievances against Defendant Brown. Second, the alleged actions of Defendant Snyder effectively disrupted Plaintiff's ability to file a step two grievance; if Defendant Snyder, as Plaintiff's case manager, is responsible for accepting grievances and forwarding the same to the appropriate prison official, Defendant Snyder's declination to do so prohibits Plaintiff's ability to seek relief, or at the least, makes the process unnecessarily more difficult. Notably, Plaintiff explained that Defendant Snyder's conduct caused his step three grievance against Defendant Brown to be denied for

---

[5]Although not all of Plaintiff's allegations are pled in the complaint, Plaintiff clarifies his allegations in his response, which the Court accepts in making this recommendation. Moreover, as further explained below, Plaintiff may submit an amended complaint including the full scope of his factual allegations against Defendant Snyder.

Plaintiff's failure to exhaust administrative remedies.   Third, Plaintiff asserts that Defendant Snyder's motivation in refusing to accept the grievance (or turn in the grievance to the appropriate official) arose from the fact that the grievance was filed against Defendant Brown, another facility officer.   *See Gee*, 627 F.3d at 1189 (similar analysis).   Therefore, the Court believes Plaintiff states a plausible claim of First Amendment retaliation against Defendant Snyder.   As the law regarding a prisoner's right to file grievances was clearly established at the time of the events in this matter, the Court concludes that, at this stage of the litigation, Defendant Snyder is not entitled to qualified immunity.   The Court recommends that Plaintiff's Claim Three be permitted to proceed, and Defendants' motion to dismiss be denied to this extent.

### C.      *Claim Four: Section 1997d Harassment*

Plaintiff brings Claim Four against Defendant Emrick pursuant to 42 U.S.C. § 1997d, which prohibits retaliation against any person "reporting conditions which may constitute a violation" of the Civil Rights of Institutionalized Persons Act ("CRIPA").   "CRIPA 'does not provide for an individual right of action.'"   *Woodstock v. Golder*, No. 10-cv-00348-ZLW-KLM, 2011 WL 1060566, at *10 (D. Colo. Feb. 7, 2011) (citing *Callahan v. Southwestern Med. Ctr.*, No. CIV-03-1434-F, 2005 WL 1238770, at *6 (W.D. Okla. Apr. 29, 2005)).   CRIPA authorizes the attorney general to initiate suit on behalf of incarcerated persons; it does not provide a basis for suit by an imprisoned individual.   *Pope v. Bernard*, No. 10-1443, 2011 WL 478055, at *1 (1st Cir. 2011) (unpublished) (CRIPA "does not create a private right of action in favor of an *individual*." (emphasis in original).)   The fact that Plaintiff sues Defendant Emrick in his official capacity does not cure this deficiency.   Thus, Plaintiff's invocation of CRIPA against Defendant Emrick is improper and Claim Four should be dismissed.

Even if the Court were to construe Plaintiff's Claim Four against Defendant Emrick as under his First Amendment right to be free from retaliation, as explained above in this Court's analysis of Claim Three, Defendant Emrick's conduct, consisting of a single incident of refusing to take grievance forms, when Plaintiff has not alleged that Defendant Emrick has any role whatsoever in the prison grievance process, would not chill a person of ordinary firmness from continuing to file grievances.[6]  The Court determines that Plaintiff fails to state a cognizable constitutional violation on part of Defendant Emrick, thus Defendant Emrick is entitled to qualified immunity.  Defendant Snyder and Emrick's motion should be granted to the extent that Claim Four is dismissed with prejudice.

### D.    *Request for Compensatory Damages under the PLRA*

Plaintiff requests compensatory damages from Defendant Brown only.  (Docket #80 at 4.) As stated above, the Court recommends Claims One and Two against Defendant Brown be dismissed.  However, should these claims proceed, the Court agrees with Defendants Snyder and Emrick that the PLRA bars Plaintiff's request for compensatory damages, because the physical injury alleged by Plaintiff (irritable bowel syndrome) is a manifestation of mental and emotional harm.

In *Turner v. Schultz*, adjudicated in this District, the court noted that "although claims for mental and emotional distress can be brought pursuant to § 1983, ... § 1997e(e) provides that 'such

---

[6]The Court recognizes that Plaintiff sues Defendant Emrick in his official capacity.  "A state official in his or her official capacity, when sued for [prospective] injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  *Will*, 491 U.S. at 71 n.10 (citation omitted).  Plaintiff requests prospective injunctive relief requiring Defendant Emrick "to adhere to the Department of Corrections 'Code of Conduct' policy of the Administrative Regulations 1450-01."  (Docket #80 at 4.)  Thus, the Court does not recommend dismissal of Defendant Emrick for lack of subject matter jurisdiction.

a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'"  130 F. Supp. 2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir.1999)).  Further, another judge in this District explained how "a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (citations omitted).  In particular, one of the cases cited by the *Hughes* Court, *Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C. Cir. 1998), affirmed a *sua sponte* dismissal with prejudice of a prisoner case, despite the prisoner's affidavit stating that he suffered weight loss, appetite loss, and insomnia after an alleged wrongful act by prison officials, because Section 1997e(e) "preclude[s] reliance on the somatic manifestations of emotional distress." *See also Cain v. Virginia,* 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and severe headaches caused by emotional distress not a "physical injury" under the PLRA).

Decisions of the Tenth Circuit have held likewise.  *E.g., Lawson v. Engleman*, 67 F. App'x 524, 526-27 (10th Cir. 2003) ("We conclude that [the damages] claim was properly dismissed. While claims for mental and emotional distress are cognizable under § 1983, under § 1997e(e) 'such a suit [by a prisoner] cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" (quoting *Perkins,* 165 F.3d at 807)).[7]

---

[7]Outside this District and Circuit, the results have been generally the same. *E.g., Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006) (prisoner alleged that a disciplinary report was false, retaliatory, and resulted in his remaining in a high security facility for an additional year, which caused him to be "mentally and physically depressed" and lose 50 pounds; court held that this was insufficient to state a claim for physical injury); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (mental anguish, emotional distress, psychological harm, and insomnia do not constitute physical injury for purposes of PLRA)*; Taylor v. Milton*, 124 F. App'x 248, 249 (5th Cir. 2005) (plaintiff did not allege a physical injury, thus Section 1997e(e) precluded "his claim for compensatory damages for any mental or emotional injury suffered as a result of the confiscation of his legal work at gunpoint."); *Harrison v. Smith,* 83 F. App'x 630, 631 (5th Cir. 2003) ("[The inmate's] alleged physical injuries necessarily are a manifestation of his psychological reaction to what he perceived

Here, Plaintiff avers he developed irritable bowel syndrome, "directly related to stress and high anxiety levels," resulting from his mental and emotional distress incurred by the events at issue. (Docket #80 at 1.)   By Plaintiff's own words, the irritable bowel syndrome is a physical manifestation of his mental and emotional state of being; thus, in light of the governing precedent described above, Plaintiff's request for compensatory damages should be dismissed.

The Court notes that the PLRA does not bar punitive damages.  *Searles v. Van Bebber*, 251 F.3d 869, 880-81 (10th Cir.  2001.) ("as a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury").  Therefore, while Plaintiff's request for compensatory damages should be dismissed,  Plaintiff's request for punitive damages, injunctive relief and declaratory relief may proceed.

### E.       Summary

Although Plaintiff fails to state a cognizable constitutional violation committed by Defendant Emrick, the Court believes Plaintiff's claim for retaliation against Defendant Snyder meets the plausibility standard and should proceed.  Thus, Defendant Snyder, at this stage of the litigation, is not entitled to qualified immunity, whereas qualified immunity protects Defendant Emrick from suit. Furthermore, the Court agrees with Defendants that Plaintiff's request for compensatory damages is not permissible under the PLRA, as the alleged injury is a physical manifestation of Plaintiff's asserted mental and emotional distress.  The Court recommends Defendants Snyder and Emrick's motion be granted in part and denied in part, in that Claim Three should be permitted to proceed, Claim Four should be dismissed with prejudice, and the request for compensatory damages should be dismissed.

---

to be an unsafe condition."); *Davis*, 158 F.3d at 1349 (physical injury qualifying under Section 1997e(e) must be "prior;" inmate's "weight loss, appetite loss, and insomnia after the disclosure of his medical status" did not meet "physical injury" requirement).

III.    **Dismissal Without Leave to Amend**

"[D]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gee*, 627 F.3d at 1195 (citation omitted).  Regarding Claims One, Two, and Four, in consideration of the governing legal precedent, the Court does not believe amendment would cure the stated deficiencies.  However, as to Claim Three, the Court recommends that Plaintiff be permitted to file a Second Amended Complaint against Defendant Snyder only, limited to his claim of retaliation and any request for injunctive or declaratory relief and punitive damages.  The Court notes that the allegations against Defendant Snyder considered in this recommendation are found throughout the filings; judicial efficiency and economy would best be served by one governing pleading incorporating the full factual basis for Plaintiff's Claim Three.  Preemptively, the Court recommends that any Second Amended Complaint submitted by Plaintiff exceeding the scope of permission delineated herein should be stricken.

IV.    **Plaintiff's "Summary Judgement Motion"**

Plaintiff filed this rather brief motion on April 28, 2011, requesting summary judgment against each Defendant.  Plaintiff recites language for both the Rule 56 summary judgment and Rule 12(b)(6) dismissal standards.  As explained above, the Court recommends finding that Plaintiff fails to state a cognizable constitutional claim against Defendants Brown and Emrick, thus mooting Plaintiff's request for summary judgment against these Defendants.  The Court further recommends that Plaintiff file a Second Amended Complaint fully encompassing his allegations against Defendant Snyder, which would also moot the motion against Defendant Snyder.  The Court thus believes that this motion is now not only moot, but also premature.  The Court recommends denying Plaintiff's motion without prejudice, with leave to re-file once the District Court has ruled on the two motions to dismiss.

## CONCLUSION

Accordingly, the Court **RECOMMENDS** Defendant Brown's Motion to Dismiss [filed April 12, 2011; docket #60] be **GRANTED**, Defendants Snyder and Emrick's Motion to Dismiss [filed April 15, 2011; docket #64] be **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's "Summary Judgement Motion" [filed April 28, 2011; docket #75] be **DENIED WITHOUT PREJUDICE**, with leave to re-file.[8]   The Court recommends that Claims One, Two, and Four, as well as Plaintiff's request for compensatory damages, be **dismissed with prejudice**, and Defendants Brown and Emrick be dismissed from this action.   The Court further recommends that Plaintiff be permitted to file a Second Amended Complaint against Defendant Snyder only, limited to the allegations of First Amendment retaliation as described in Claim Three, for injunctive and declaratory relief and punitive damages, if Plaintiff so chooses.   The Court notes that discovery in this matter is stayed pending disposition of the two motions to dismiss.   (Docket #92.)

Respectfully submitted this 8th day of July, 2011, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[8]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).