IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02669-WYD-MEH

STEVEN DOUGLAS GREEN,

      Plaintiff,

v.

DARRELL SNYDER,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are Plaintiff's Motion for Summary Judgment [filed January 30, 2012; docket #154], and Defendant's Motion for Summary Judgment [March 3, 2012; docket #162]. Both motions are referred to this Court for recommendation. (Dockets ##155, 163.) The matters are fully briefed, and oral argument would not materially assist the Court in its adjudication of the motions. For the reasons stated below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment [filed January 30, 2012; docket #154] be **DENIED**, and Defendant's Motion for Summary Judgment [March 3, 2012; docket #162] be **GRANTED**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the

## BACKGROUND

### I.      Findings of Fact

The Court finds the following facts, some of which are stipulated by the parties. The Court notes that several of the "Facts" Plaintiff asserts are legal conclusions lacking factual support. Standing alone, such assertions are not sufficient to survive a Motion for Summary Judgment and are, therefore, excluded from the Court's findings.

1.      Plaintiff is an inmate in the custody of the Colorado Department of Corrections ("CDOC"). (Stipulated.)[2]

2.      Plaintiff was incarcerated at Sterling Correctional Facility ("SCF") from September 10, 2009, through May 5, 2010.  During that time, Defendant served as Plaintiff's case manager.  (Stipulated.)

3.      Defendant received a "Performance Documentation Form" for failing to timely process Step 1 grievances from an unknown inmate in early January 2010.  (Docket #154 at 5.)

4.      While Plaintiff was at SCF, he alleges that corrections officer Wendy Brown sexually harassed him.  (Docket #3 at 4.)

5.      Defendant claims he has no past or current knowledge of a corrections officer named Wendy Brown.  (Docket #162-1.)

6.      Although Defendant asserts he has never met Wendy Brown, Defendant was aware that Plaintiff's claims against Ms. Brown were under investigation.  (*Id*. at 2.)

---

Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

[2]The term, "stipulated," refers to those facts stated in either Plaintiff or Defendant's motion and "admitted" by the non-moving party in his respective response.

7.      Defendant claims he had "little to no involvement" in the investigation of Plaintiff's claims against Wendy Brown.  (*Id.*)

8.      In accordance with his role as case manager, Defendant kept notes regarding when Plaintiff requested grievance forms.  (*Id.*)

9.      Defendant's notes regarding Plaintiff's grievance form requests indicate that Plaintiff asked for several Step 1 grievance forms in December 2009.  Defendant provided the forms accordingly.  (*Id.*)

10.     Plaintiff asserts that he submitted a single "yellow request kite" to Defendant in order to obtain a single grievance form to grieve incidents involving Wendy Brown on January 14, 2010.  (Docket #130 at 2.)

11.     Defendant asserts that Plaintiff requested three Step 1 grievance forms on or about March 10, 2010.[3]  Defendant provided the forms accordingly.  (Docket #162-1 at 2.)

12.     Based on Defendant's review of his notes, Defendant believes that the Step 1 grievance form or forms Plaintiff requested on March 10, 2010, concerned Plaintiff's allegations against Wendy Brown.  (*Id*. at 3.)

13.     A letter from Anthony DeCesaro dated July 22, 2010, states that Plaintiff filed a Step 1 grievance against Wendy Brown on March 3, 2010.  (Docket #154 at 11.)

14.     On March 29, 2010, Plaintiff submitted a document requesting two Step 1 grievance forms to Defendant (the "March 29 Kite").  The March 29 Kite asserted that Plaintiff needed the grievance forms "because staff [was] continuing to treat [Plaintiff] unfairly."  Plaintiff also reiterated a request for a "Step 2" that he asked for a week

---

[3]Defendant's Response to Interrogatory 3(4) states that Defendant "think[s] that a Step 1 grievance form or forms were given on or about 3/3/10." (Docket #54 at 9.)  However, Defendant corrects this statement in the sworn affidavits submitted in conjunction with his response to Plaintiff's Motion and in support of his own Motion.  (*See* dockets ##160-1 at 2, 162-1 at 2.)

prior.  The March 29 Kite does not indicate why Plaintiff sought a Step 2 grievance form.  (*Id*. at 8.)

15.    A "post-it" note placed on the March 29 Kite states "I do not have those forms, so I forwarded the last kite to library.  I will look on the computer.  If the library sends you some let me make copies."  (*Id*.)

16.    Defendant does not recall responding to a kite with this note.   However, Defendant claims that he would not have directed a request for grievance forms from the library because he is currently able, and was able at the time, to print grievance forms from his own computer.  (Docket #160-1 at 5.)

17.    According to Defendant, the note appears to be his response to a request for an internet search address.  (*Id*.)

18.    Plaintiff denies knowledge of any internet search forms.  (Docket #171 at 5.)

19.    Defendant does not recall Plaintiff requesting a Step 2 grievance form concerning Wendy Brown.  (Docket #160-1 at 3.)

20.    However, Defendant does recall seeing a Step 2 grievance form concerning Wendy Brown attached to a kite intended for Investigator Larry Graham.  Defendant placed the kite and grievance in Mr. Graham's mailbox.  (*Id*.)

21.    On April 22, 2010, Plaintiff submitted a document (the "April 22 Kite") which asks the intended recipient to "check on [his] recent Step 2 grievance that [he] just turned in to [the recipient] last Thursday, for the Investigator Larry K. Graham to let [Plaintiff] know he got it..."  The postscript of the April 22 Kite specifies that "[i]t's the Step 2 concerning (sic) Wendy Brown issue..." (Docket #154 at 8.)

22.    Defendant forwarded the April 22 Kite to Investigator Graham by placing it in his mailbox.  (Docket #162-1 at 3.)

23.     A "post-it" note placed on the April 22 Kite states "He got your kite; he may not get grievance."  (Docket #154 at 8.)

24.     Defendant asserts that attaching a Step 2 grievance to a kite is not the proper procedure for filing a Step 2 grievance.  (Docket #162-1 at 3-4.)

25.     Defendant did not document his receipt of a Step 2 grievance concerning Wendy Brown filed by Plaintiff.  (Stipulated.)

26.     Defendant asserts that he did not return the Step 2 grievance form concerning Wendy Brown to Plaintiff because he believed the form was a copy of a grievance that Plaintiff had already filed.  (Docket #162-1 at 4.)

27.     Defendant left for vacation beginning on March 17, 2010. (Stipulated.)

28.     According to Defendant, an inmate may file grievances with other case managers when his or her assigned case manager is away.  (Docket #162-1 at 4.)

29.     As described in the July 22, 2010 letter from Anthony DeCesaro, Plaintiff made several procedural errors in grieving the alleged harassment by Wendy Brown. (Docket #154 at 11.)

30.     The first procedural deficiency noted in the July 22, 2010 letter is Plaintiff's "fail[ure] to file a Step 2 [] grievance" related to the incident.  (*Id.*)

31.     The second procedural deficiency noted in the July 22, 2010 letter relates to the timing of Plaintiff's Step 1 grievance. In particular, the letter states that according to AR 850-04, "A Step 1 grievance must be filed ***no later than 30 calendar days from the date the offender knew, or should have known of the facts giving rise to the grievance***."  (*Id.*) (emphasis in original).  Mr. DeCesaro goes on to note that Wendy Brown left employment with CDOC in January 2010, but that Plaintiff filed his Step 1 grievance related to Wendy Brown on March 3, 2010.  (*Id.*)

32.     Mr. DeCesaro determined that Plaintiff filed his Step 1 grievance of Wendy Brown "two months later and well beyond the allowable time frame." (*Id.*)

33.     Based on the procedural deficiencies described in Mr. DeCesaro's July 22, 2010 letter, Mr. DeCesaro stated he "[could] grant no relief in this matter." (*Id.*)

34.     At the time Plaintiff was under the supervision of Defendant, Administrative Regulation 850-04 ("AR 850-04"), effective December 1, 2009, provided the appropriate protocol for filing grievances and established a case manager's duties regarding those grievances. (Docket #160-2.)

35.     According to AR 850-04 IV.I.1.a., effective December 1, 2009, "[a] Step 1 grievance must be filed no later than 30 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." (*Id.* at 7.)

36.     Plaintiff's initial Complaint alleges that Wendy Brown first initiated inappropriate sexual contact with him on October 31, 2009. (Docket #3 at 4.)

37.     Plaintiff also alleges that incidents of sexual harassment occurred on November 14, 2009, November 20-21, 2009, and January 3, 2010. (*Id.* at 4, 10.)

38.     Plaintiff received a letter from Wendy Brown on January 22, 2010, indicating that she had terminated her employment with SCF. (*Id.*)

39.     Plaintiff decided to alert prison officials of the incidents involving Wendy Brown on January 22, 2010. (*Id.* at 10.)

## II.     Procedural History

Plaintiff, proceeding *pro se*, filed his original Complaint on November 2, 2010, and a brief amendment accepted by the Court on May 5, 2011.  (Dockets ## 3, 80, 85.)  Plaintiff initially asserted four claims against three defendants pursuant to 42 U.S.C. § 1983, alleging violations of

his First and Eighth Amendment rights, as well as a violation of 42 U.S.C. § 1997d. (Docket #3.) Then-named defendant Wendy Brown filed a motion to dismiss, as did Gerald Emerick and Defendant Darrell Snyder. Upon recommendation from this Court, Chief Judge Daniel affirmed that Plaintiff had failed to state valid constitutional claims against either Wendy Brown or Gerald Emerick, and dismissed Plaintiff's First, Second, and Fourth claims pursuant to Fed. R. Civ. P. 12(b)(6). In addition, Chief Judge Daniel granted Plaintiff leave to file an amended complaint limited to his claim against Defendant Snyder on or before September 21, 2011. (Dockets ##123, 126.) Plaintiff timely filed his Second Amended Complaint on September 15, 2011. (Docket #130.) Accordingly, the Court considers Plaintiff's Second Amended Complaint as the operative pleading. *See Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal effect.") (citing *Miller v. Glanz*, 948 F. 2d 1562, 1565 (10th Cir. 1991)).

Plaintiff's Second Amended Complaint asserts one cause of action (labeled as "Claim Three") against Defendant: "The retaliation through deliberate...mishandling of grievances and failure to provide grievances in a timely manner...in violation of the Plaintiff Steven Douglas Green's First Amendment right to petition the government for a redress of grievances under the United States Constitution of America." (Docket #130 at 2-3.) Plaintiff alleges that Defendant failed to timely provide him with a Step 1 grievance form to grieve the incidents involving Wendy Brown, that Defendant "deliberately re-routed" Plaintiff's request for a Step 2 grievance form regarding the same issue, and that Defendant failed to file Plaintiff's submitted Step 2 grievance. (*Id*. at 2, 4.) As a result of the alleged failures, Plaintiff argues that Defendant caused Plaintiff to lose "the appropriate and just relief...against Def. Wendy Brown" by the denial of his Step 3 grievance. (*Id*. at 4.) Plaintiff believes that Defendant's acts and omissions were "done purposely

7

in an effort to discourage Plaintiff...from further filing and receiving relief against Def. Wendy Brown." (*Id*.)  As relief, Plaintiff asks the Court to order Defendant to produce the missing Step 2 grievance against Wendy Brown, punitive damages in the amount of $150,000, and a declaration that the acts and omissions described in the Second Amended Complaint violated Plaintiff's rights under the Constitution and laws of the United States.  (*Id* at 5.)

Plaintiff and Defendant both filed motions for summary judgment, which are now fully briefed and pending before the Court.  Thus far, Plaintiff has filed several motions asking the Court to strike Defendant's reply brief and affidavit based upon Defendant's failure to comply with Chief Judge Daniel's practice standards and apparent factual inconsistencies between Defendant's affidavit and Defendant's responses to interrogatories.  (*See* dockets ##183, 187, 197, 204.)  Although the Court struck Defendant's first reply brief for failure to comply with Chief Judge Daniel's practice standards [*see* docket #191], the Court declined to strike Defendant's affidavit [*see* docket #202]. With the Court's permission, Defendant submitted a second reply brief on April 24, 2012.  As explained in the Court's May 9, 2012 Minute Order, the Court accepts  Defendant's second reply as filed.  (*See* docket #207.)

## LEGAL STANDARDS

### I.      Standard for Summary Judgment

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

8

of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party."

*Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.     Treatment of a Pro Se Plaintiff's Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). In other words, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## DISCUSSION

Plaintiff's Motion, filed January 30, 2012, argues that summary judgment is warranted because Defendant's conduct violated the Prison Litigation Reform Act ("PLRA"), the Civil Rights of Institutionalized Persons Act ("CRIPA"), and the First Amendment. (Docket #154 at 3.) According to Plaintiff, Defendant's failure to explain why the Step 2 grievance was not properly handled allows the Court "draw to (sic) the conclusion that the acts were indeed retaliation," and ultimately to enter judgment in favor of Plaintiff. (*Id.*)

Defendant's response to Plaintiff's Motion advances essentially the same arguments set forth in Defendant's summary judgment motion. (*See* dockets ##160, 162.) Specifically, Defendant

10

argues that summary judgment should be entered in his favor because Plaintiff fails to provide sufficient facts in support of his First Amendment claim and Defendant is entitled to qualified immunity.

Because the qualified immunity inquiry includes an evaluation of the merits, the Court will begin by determining whether Defendant is entitled to qualified immunity and, therefore, summary judgment. If the Court finds that summary judgment should not be entered in favor of Defendant, the Court will proceed to analyze whether Plaintiff is entitled to summary judgment.

At the outset, the Court notes that Plaintiff's Second Amended Complaint does not mention the PLRA or the CRIPA. (*See* docket #130.) Thus, the Court will not consider the statutes in adjudicating Plaintiff's Motion and will limit its analysis of Plaintiff's Motion to the operative pleading. *See U.S. ex rel Told v. Interwest Const. Co., Inc.*, 267 F. App'x 807, 810 (affirming district court's refusal to consider new claims at summary judgment phase). Additionally, although Plaintiff's Second Amended Complaint asserts a single cause of action, the Court construes the facts and arguments contained therein to allege two claims: the denial of legal access and retaliation. While the claims appear to merge insofar as Plaintiff alleges that he was denied access to the courts in retaliation for his grievances, the Court will determine whether Defendant is entitled to qualified immunity for either or both claims.

## I.       Defendant's Motion for Summary Judgment

Defendant asserts that he is entitled to qualified immunity on claims against him in his individual capacity. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face

11

the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

For each First Amendment claim, the Court will examine first whether the Plaintiff has demonstrated on supported facts that the Defendant violated his rights. If the Plaintiff has established sufficient facts to support a constitutional violation, the Court will proceed to determine whether the right was clearly established at the time of the alleged conduct. Because Plaintiff's retaliation claim is premised on the alleged denial of legal access, the Court will consider the denial of access claim before determining whether Plaintiff has adequately supported his claim of retaliation.

A.     Denial-of-Access Claim

Plaintiff alleges that Defendant's deliberate mishandling of grievances violated Plaintiff's First Amendment right to petition the government for redress of grievances.

An inmate asserting a denial-of-access claim "must demonstrate actual injury from interference with his access to the courts ...." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010). The Tenth Circuit recently distinguished an inmate's ability to utilize state administrative grievance

procedures from an inmate's right to access the courts, noting that "there is no constitutional right to state administrative grievance procedures." *See Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011).[4]   Although a prison official's obstruction of the grievance process may excuse an inmate's non-compliance with the PLRA, it does not create a cause of action under the Constitution. *See id.* at n.2.

Plaintiff asserts that Defendant's conduct inhibited Plaintiff from successfully navigating the prison's grievance process; however, Plaintiff does not allege any direct interference with his access to the courts.   Moreover, the record in this case shows that Plaintiff's failure to exhaust his administrative remedies had no impact on Plaintiff's ability to fully and completely resolve his claims against Wendy Brown.  Indeed, Ms. Brown did not even mention Plaintiff's failure to exhaust in her motion to dismiss.  (*See* docket #60.)  Upon review of Ms. Brown's motion to dismiss, this Court found that the facts alleged by Plaintiff were not sufficient to state a claim under the Eighth Amendment.  (*See* docket #108.)  Chief Judge Daniel adopted this Court's recommendation, and dismissed Plaintiff's claims against Ms. Brown on the merits.  (Docket #123.)

Because Plaintiff's assertion of interference is limited to the prison's grievance process, and because Plaintiff's claims against Wendy Brown have been fully adjudicated, the Court finds that Plaintiff has failed to demonstrate any constitutionally cognizable injury resulting from the alleged denial of legal access.  Thus, to the extent Plaintiff has asserted a claim for the denial of legal access, the Court recommends the claim be dismissed.

---

[4]The Tenth Circuit issued its opinion in *Boyd* on October 3, 2011, several months after this Court's Recommendation [docket #108] and Chief Judge Daniel's Order [docket #123] on Defendant's motion to dismiss.  Although this Court initially found that inhibiting an inmate from reporting a constitutional violation through a grievance process infringes on protected speech, in light of *Boyd*, the Court no longer adheres to that particular interpretation of the law.

B.    Retaliation Claim

As described above, Plaintiff alleges that Defendant engaged in retaliation by deliberately mishandling Plaintiff's grievances related to Wendy Brown "in an effort to discourage Plaintiff from further filing and receiving relief against Def. Wendy Brown."  (Docket #130.)

The Tenth Circuit has adopted a three-part test which requires plaintiffs alleging retaliation to show:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Defendant makes no argument regarding the first element of *Shero*, nor does Plaintiff specifically identify the protected activity in which he was involved.  However, the Court construes Plaintiff's Second Amended complaint liberally, and finds that Plaintiff's filing of grievances against Wendy Brown constitutes a protected activity under the First Amendment.  *See Gee*, 627 F.3d at 1189 (finding that a prisoner's filing of specific grievances against defendants is a constitutionally protected activity).

Turning to the second element of *Shero*, Plaintiff must show that the injury caused by Defendant was sufficiently serious to chill a person of ordinary firmness from continuing to engage in the protected activity, and that the injury was caused by Defendant's actions.  *Shero*, 510 F.3d at 1203.  Although Plaintiff does not specifically identify the injury on which his claim is based, the Court construes his Second Amended Complaint liberally to allege injury based on Defendant's

14

deliberate mishandling of grievances and any denial of legal access that occurred as a result.

Plaintiff cites, and the Court finds, no cases in the Tenth Circuit indicating that a prison official's mishandling of grievances is sufficiently adverse to chill a person of ordinary firmness from engaging in a protected activity. The Court is not persuaded that the conduct alleged in this case, namely, Defendant's failure to timely provide Plaintiff with grievance forms and subsequent failure to file a Step 2 grievance on Plaintiff's behalf, would chill a person of ordinary firmness from continuing to engage in a protected activity. Any such injury would, in the Court's view, be *de minimis*.

While the Court finds greater likelihood of injury to arise from the consequences of the alleged mishandling, in this case, there were none. Based on the Court's reading of the Administrative Regulations, the July 22, 2010 letter from Anthony DeCesaro, and Plaintiff's own pleadings, Plaintiff's Step 3 grievance against Wendy Brown was denied, in part, based on Plaintiff's own conduct. (*See* dockets ##160-2, 154 at 11, and 130 at 2.) Pursuant to AR 850-04 VI.I.1.a., effective December 1, 2009, "[a] Step 1 grievance must be filed no later than 30 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." (Docket #160-2 at 7.) Plaintiff's initial Complaint alleges that Wendy Brown first initiated inappropriate sexual contact with him on October 31, 2009, and that incidents of sexual harassment also occurred on November 14, 2009, and November 20-21, 2009. (Docket #3 at 4, 10.) Because Plaintiff knew of at least three incidents of harassment as of December 1, 2009, Plaintiff was required to file a Step 1 grievance no later than December 31, 2009. However, Plaintiff asserts that he did not request a Step 1 grievance form related to these incidents until January 14, 2010. (Docket #130 at 2.) Given these facts, even if Defendant had provided Plaintiff with a Step 1

grievance form on the exact date Plaintiff decided to grieve Wendy Brown, Plaintiff's Step 1 grievance would still have been untimely, and Plaintiff's Step 3 grievance would have been subject to denial on that basis.

Despite Plaintiff's failure to exhaust his administrative remedies (which, in the Court's view, is due to Plaintiff's own delay), Plaintiff received a full opportunity to prosecute his claims against Wendy Brown. Ultimately, the Court determined that Plaintiff was not entitled to relief. Because Plaintiff suffered no apparent loss, notwithstanding his own procedural errors, the Court does not find that Defendant's conduct caused Plaintiff any injury that would chill a person of ordinary firmness from continuing to engage in protected activity.

Even if Plaintiff could demonstrate sufficient injury, Plaintiff must also show that any injury caused by Defendant was substantially motivated by retaliation.  *Shero*, 510 F.3d at 1203. Allegations and suspicions of a defendant's motive will not suffice.  *Peterson*, 149 F.3d at 1444. Rather, a plaintiff's claim of retaliation must set forth specific facts showing that but for the protected activity, the adverse action would not have occurred.  *Smith v. Maschner*, 899 F.2d 940, 949-950 (10th Cir. 1990).

In his response to Defendant's Motion for Summary Judgment, Plaintiff admits that "Def. Snyder's motives could have been a number of different things...[and that] we can't speculate what his intentions were."  (Docket #171 at 3.)   The Court agrees, and notes that Plaintiff has failed to produce any direct evidence of retaliation.

Where direct evidence is lacking,  the Court may, in some instances, infer retaliation when the adverse action occurs in close proximity to the protected activity.  *See Johnson v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000) (finding that a chronology of events was sufficient to survive a motion

to dismiss on a claim of retaliation).   In the present case, an inference of retaliation is less obvious because the alleged adverse action occurred before or concurrently with the protected activity. Based on Plaintiff's account of events, Defendant could not have known that Plaintiff was attempting to file a grievance against Wendy Brown until January 14, 2010, when Plaintiff submitted a "yellow request kite" seeking the Step 1 form. (Docket #130 at 2.)  Thus, Defendant's alleged decision to withhold a Step 1 grievance form related to Wendy Brown could not have been motivated by Plaintiff's grievances against Wendy Brown because no such grievances had been filed.  While Defendant's alleged mishandling of Plaintiff's Step 2 grievance against Wendy Brown theoretically could have been motivated by Defendant's displeasure with the first grievance, this reading is rendered implausible by the fact that Defendant does not know Ms. Brown, and Ms. Brown had already left employment with SCF before Plaintiff filed any grievances against her. (*See* dockets ##162-1 at 1, 3 at 10.)  Searching the entire record, the Court finds no apparent reason why Defendant would be personally and particularly interested  in Plaintiff's decision to file grievances against Wendy Brown, much less moved to the point of retaliation.   Based on the lack of evidence presented by Plaintiff and the undisputed evidence undermining Plaintiff's theory, the Court finds that Plaintiff has failed to produce sufficient facts showing that Defendant possessed a retaliatory motive that was the but-for cause of the alleged mishandling of grievances.

Considering the entire record, the Court finds that Plaintiff has not presented a viable claim for either the denial of legal access or retaliation. Because Plaintiff's claims against Wendy Brown have been resolved on the merits, Plaintiff has  failed to show sufficient injury to support either First Amendment claim.  Morever, Plaintiff has not demonstrated that any injury he may have suffered was the but-for result of the grievances he filed.  Accordingly, the Court finds that Plaintiff has not

17

raised a triable issue of fact regarding a violation of his First Amendment rights. At a minimum, Plaintiff has not established that any violation of law by Defendant was clearly established at the time of the alleged conduct. Therefore, the Court recommends the District Court find that Defendant is entitled to qualified immunity and grant the Defendant's Motion for Summary Judgment accordingly.

## II.     Plaintiff's Motion for Summary Judgment

Like Defendant, Plaintiff argues he is entitled to judgment as a matter of law because the evidence suggests that Defendant did not follow the prison's administrative grievance protocol. However, for the reasons described above, Plaintiff has not demonstrated that Defendant's alleged failures violated the First Amendment. Thus, the Court cannot find, as Plaintiff contends, that no reasonable fact finder could return a verdict for Defendant. The Court recommends Plaintiff's Motion for Summary Judgment be denied.

<u>CONCLUSION</u>

Although the Court construes Plaintiff's Second Amended Complaint liberally to allege two claims under the First Amendment, the Court finds that Plaintiff has failed to demonstrate any genuine issues of material fact with respect to either claim. Thus, the Court finds that Defendant is entitled to qualified immunity. In light of these findings, the Court RECOMMENDS Plaintiff's Motion for Summary Judgment  [filed January 30, 2012; docket #154] be **DENIED**, and Defendant's Motion for Summary Judgment [filed March 3, 2012; docket #162] be **GRANTED**.

Respectfully submitted this 17th day of May, 2012, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge